# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                         No. 1:18-mj-02490-JCH-1

GREGORY HAMILTON,

    Defendant.

## MEMORANDUM OPINION AND ORDER

    Defendant Gregory Hamilton was federally prosecuted for the misdemeanor offenses of driving under the influence of alcohol and unsafe operation of a vehicle at the El Morro National Monument in western New Mexico. A federal magistrate judge found Mr. Hamilton guilty on both counts following a bench trial and sentenced him to one year of probation with special conditions and assessed a $20 fine. Mr. Hamilton appeals his convictions, arguing that they were supported by insufficient evidence. He also argues that the prosecutor's waiver of his opening statement deprived Mr. Hamilton of fair notice of the law and facts against him, thereby entitling him to an acquittal. The Court affirms the convictions and dismisses the appeal.

**I.**     **FACTUAL BACKGROUND**

    In September 2017, Mr. Hamilton, an architecture student at the University of New Mexico, was on a class trip at the El Morro National Monument. *See* Information, ECF No. 1; Transcript of Bench Trial 156:1-15, ECF No. 21 (Tr.). The class arrived around 1:00 p.m., hiked for about two hours, and then started to make dinner in the campground area. *Id*. at 156:16-17; 157:7-15. The group, including Mr. Hamilton, started drinking Bud Light beers. *Id*. at 157:18-22. Before his arrest, Mr. Hamilton drank a total of two beers. *Id*. at 37: 16-20; 158:9-12.

Because the class members parked their cars in a way that congested the one-way looped road, park rangers arrived at the campsite and told class members, including Mr. Hamilton, to move their improperly parked cars. *Id.* at 159:5-21. It was in response to this command that Mr. Hamilton went to his car and began moving it to an open spot behind a Jeep owned by a classmate. *Id.* at 95:10-12. Park Ranger Ryan Gallagher, the arresting officer, watched and heard Mr. Hamilton strike the Jeep. *Id.* at 36:6-7. Then Mr. Hamilton reversed his car so that the driver of the vehicle behind him sounded its horn, although no collision occurred. *Id.* at 36:6-9. Watching all of this, Ranger Gallagher "fear[ed] another collision to be imminent." *Id.* 36:10. However, Ranger Gallagher testified at trial that no visible damage resulted to the Jeep and that Mr. Hamilton's rate of speed was about five to ten miles per hour, an appropriate rate of speed for the area's 15 m.p.h. limit. *Id.* at 92:21-25 – 93:1-4.

Ranger Gallagher approached Mr. Hamilton in his vehicle and described at trial his observations as follows:

> As I reached the driver's side of the vehicle, the window was open. I asked the Defendant if he was okay. His response to me was, "What happened?" I noted that his speech was slurred and there was an odor of alcoholic beverage about the vehicle … I asked him to produce registration and identification documents for the vehicle. [He] had some difficulty in doing that. I asked him how much he had had to drink. He responded to me, two beers. I asked the Defendant then to step out of the vehicle. [He] had difficulty with the seatbelt and had to use the door to aid in his exit … His eyes did appear bloodshot.

*Id.* at 36:14-24; 37:15.

At this point Ranger Gallagher attended to an unrelated altercation. *Id.* at 40:6-9. The ranger instructed Mr. Hamilton to sit on the tail of the officer's truck, and for about 45 minutes Mr. Hamilton remained seated there as directed and "complied quite well." *Id.* 40:9-19. When he came back Ranger Gallagher administered three field sobriety tests (FSTs) to Mr. Hamilton – a one-legged stand test, a walk-and-turn test, and a horizontal gaze nystagmus (HGN) test. Ranger

Gallagher did not breathalyze Mr. Hamilton because he did not have a portable breathalyzer and driving Mr. Hamilton to a police station with a breathalyzer would have resulted in several hours of transportation time. *Id.* at 88:13-17. Based on his observations of Mr. Hamilton performance of the FSTs, his admission to drinking two beers, Mr. Hamilton's collision with the Jeep and then getting honked at, Ranger Gallagher cited Mr. Hamilton for DUI and unsafe operation of a vehicle. *Id.* at 87:10-21.

## II. PROCEEDINGS

### a. The Court's Evidentiary Rulings and Ranger Gallagher's Testimony

At trial each side called only one witness. Ranger Gallagher testified for the United States while Rod Gillson, Mr. Hamilton's classmate, testified for the defense. Concerning the three FSTs, defense moved on both substantive and procedural grounds to preclude Ranger Gallagher from offering expert testimony linking performance on the FSTs to intoxication. Defense argued that substantively such testimony must be subjected to Fed. R. Evid. 702 analysis set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). Procedurally, Defense argued that the United States did not disclose experts as required by Fed. R. Crim. P. 16(a)(1)(G).

The trial court mainly granted Mr. Hamilton's motion. It allowed Ranger Gallagher to offer lay testimony about his general observations from the field tests but precluded him from offering expert testimony that the tests results were indicators of intoxication. Thus, as to the HGN test, the court permitted Ranger Gallagher to testify that he conducted the HGN test as background information but prevented him from opining about what that test yielded. *See* Tr. at 48:5-8;13-15. Concerning the other two field sobriety tests, the court ruled that Ranger Gallagher could "testify as to general observations during the field sobriety test that's relevant as to impairment," but not

opine on whether Mr. Hamilton's performance was "a pass or a fail" or extrapolate Mr. Hamilton's likely BAC from his performance on these field studies. *Id*. at 71:18-25; 72:5.

With these limitations on his testimony, Ranger Gallagher took the stand. He testified that before he administered the one-legged stand test, he instructed Mr. Hamilton on how to perform the test by keeping his arms at his sides, "raise one foot, point that toe forward and look down at that foot, and then begin counting out loud, 1-1,000, 2-1,100, 3-1,000, until such time the officer tells them to discontinue." *Id*. at 80:2-3; 5-8. Ranger Gallagher even demonstrated putting his foot down and re-raising his foot all the while counting. *See id*. at 80:19-24. Ranger Gallagher described Mr. Hamilton's performance on the one-legged stand test as follows:

> The Defendant did begin the test when told to do so. He did look down at the foot that was raised and was pointing. He did sway, but kept his arms at his side, … and swayed to a degree that I was fairly certain he was going to lose his balance. He did not. The manner of counting the Defendant used changed. He changed from counting 1-1,000 – or I think it's 1,000-1, 1,000-2, as I denoted in my probable cause. Just then, after the fourth digit, in essence, started counting by 4,000, 5,000, 6,000, until he reached the number 10,000. Then he put his foot down and did not continue to complete the test. I did not – he did not continue to the point at which I would have told him to finish the test.

*Id*. at 82:7-19.

As for the walk-and-turn test, Ranger Gallagher instructed Mr. Hamilton that completing the test involved "stand[ing] in a particular position, arms at [his] sides, feet placed in a heel-to-toe manner … [and to] visualize a line on the pavement, and to walk heel to toe," continuing for nine steps while counting out loud. *Id*. 83:6-11; 83:25 – 84:1-2. On the ninth step Ranger Gallagher instructed Mr. Hamilton to "take a series of small steps pivoting on the lead foot around in a manner described … [t]hen continue back … towards [the] starting point and another series of nine heel-to-toe steps." *Id.* 83:17-20. Ranger Gallagher explained that

> very quickly, [Mr. Hamilton] began to step off line, and, in essence, walk in a normal manner – was not heel to toe at all. He did continue in a straight line with

4

hands to the side. Upon reaching the ninth step, he, again, stopped and did not
continue the test … [he] just stopped performing the test after the ninth step, without
turning or returning the nine steps back.

*Id.* 84:25 – 85:1-4.[1]

### b. The Court's Findings of Guilt

Testimony concluded and the magistrate judge, sitting as trier of fact, rendered verdicts. As to the DUI count, the court began by noting that the DUI regulation can be violated in one of two ways – by having a BAC of 0.08 which is DUI *per se* or by driving "under the influence … to a degree that renders the operator incapable of safe operation." 36 C.F.R. § 4.23(a)[2]; Tr. 182:22-25. The court noted that it was significant that Mr. Hamilton was charged with violating the latter, and therefore the main question was the degree to which the two beers rendered Mr. Hamilton incapable of safely operating the vehicle. *See* Tr. 182:24-25 – 183:1-10. The court acknowledged that "this is a much closer case than a typical driving under the influence case," and that of the two counts the DUI count was "a much tougher case." *Id*. 182:22-24; 184:3-6. However, the court reasoned that the following indicia of intoxication, in the aggregate, supported a guilty verdict:

---

[1] Neither party describes Mr. Hamilton's performance on the HGN test, which involves tracking a person's eye movements.

[2] The regulation provides in full that "[o]perating or being in actual physical control of a motor vehicle is prohibited while:"

  (1) Under the influence of alcohol, or a drug, or drugs, or any combination thereof, to a degree that renders the operator incapable of safe operation; or
  (2) The alcohol concentration in the operator's blood or breath is 0.08 grams or more of alcohol per 100 milliliters of blood or 0.08 grams or more of alcohol per 210 liters of breath. Provided however, that if State law that applies to operating a motor vehicle while under the influence of alcohol establishes more restrictive limits of alcohol concentration in the operator's blood or breath, those limits supersede the limits specified in this paragraph.

36 C.F.R. § 4.23(a).

Mr. Hamilton's admission to drinking two beers and the unquestionable fact that he was driving, hit a parked car, backed close enough to another one so that it sounded its horn, and seemed unaware of this all when Ranger Gallagher confronted him. *See id.* at 183:4-21. Without elaboration, the court stated that it considered Ranger Gallagher's field observations "relevant." *Id*. 183:12-13.

Concerning the unsafe driving count, the trial court explained that the standard for criminal liability was "less serious than reckless driving," and that the question was whether Mr. Hamilton failed to maintain a degree of control of his vehicle necessary to avoid danger to persons, property, or wildlife. *Id*. at 181:25 – 182:1-3. The court found that Mr. Hamilton drove unsafely under the regulation, reasoning that:

> the undisputed testimony … is that the defendant … hit a parked vehicle and then was backing up into another vehicle, and the other vehicle sounded its horn. I understand that the collision with the parked vehicle was minor. It was loud enough at least for one of the other witnesses here today to draw the attention from that witness who heard that collision, but nonetheless, the testimony was that it was minor.
>
> With regard to this statute, as I said, the standard is below recklessness. And it simply requires a finding beyond a reasonable doubt that the failing to maintain a degree of control of a motor vehicle necessary to avoid danger, and so it's not the actual damage; it's danger.
>
> And so with regard to this, it seems to me that if the vehicle was actually hit, then there is danger to property in this case. And so I'm going to find that there is evidence beyond a reasonable doubt [to support the conviction].

*Id*. at 182:4-20.

14 days after the magistrate judge entered a judgment of conviction Mr. Hamilton appealed, asking the Court to set aside the verdicts due to insufficient evidence and the prosecutor's waiver of his opening statement.

### III. STANDARD OF REVIEW

Under the Federal Magistrates Act, magistrate judges are authorized to try and sentence all federal misdemeanors committed within their respective judicial districts. *See* 18 U.S.C. § 3401(a). "A defendant may appeal a magistrate judge's judgment of conviction or sentence to a district judge within 14 days of its entry. To appeal, the defendant must file a notice with the clerk specifying the judgment being appealed and must serve a copy on an attorney for the government." Fed. R. Crim. P. 58(g)(2)(B). "The defendant is not entitled to a trial de novo by a district judge. The scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D). The district court "reviews de novo the sufficiency of the evidence, ask[ing] only whether taking the evidence – both direct and circumstantial, together with the reasonable inferences to be drawn therefrom – in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. McCane*, 573 F.3d 1037, 1046 (10th Cir. 2009) (citation and internal quotation marks omitted). A reviewing court does "not weigh conflicting evidence or second-guess the fact-finding decisions of the [trial] court." *United States v. Cope*, 676 F.3d 1219, 1225 (10th Cir. 2012). (citations and quotations omitted). "Where conflicting evidence exists, [the reviewing court does] not question the [fact-finder's] conclusions regarding the credibility of witnesses or the relative weight of evidence." (citations and quotations omitted).

## IV. DISCUSSION

### a. Sufficient Evidence Supported the DUI Conviction

"The elements of operating a vehicle under the influence in violation of 36 C.F.R. § 4.23(a)(1) are: (1) the defendant must be operating or in actual physical control of a motor vehicle, (2) the defendant must be under the influence of alcohol or drugs, (3) to such a degree that the defendant is incapable of safely operating the vehicle." *United States v. Wilson*, 711 Fed. Appx.

706, 709 (4th Cir. 2017).³ The Court of Appeals for the Tenth Circuit has defined the term "under the influence [of alcohol] … to mean ... a state of intoxication that lessens a person's normal ability for clarity and control." *United States v. Cope*, 676 F.3d 1219, 1227 (10th Cir. 2012). According to the United States, sufficient evidence supported Mr. Hamilton's conviction where he:

> (1) admitted to drinking two beers; (2) collided with another vehicle; (3) nearly hit a second vehicle; (4) had bloodshot, watery eyes; (5) had slurred speech; (6) had difficultly producing his license and registration; (7) had to prop himself against his car [] to maintaining footing while exiting the vehicle; and (8) could not successfully complete the field sobriety tests.

Govt.'s Resp. Br. at 7.

For his part, Mr. Hamilton argues that the evidence was insufficient to convict him where: (1) no chemical testing of his BAC existed, so that Mr. Hamilton could not exonerate himself through breath or blood testing; (2) all evidence relating to the HGN test was excluded at trial and all "scientific" aspects of the walk-and-turn and one-legged stand test were excluded, thereby "leaving the Government with just [Ranger Gallagher's] gross, lay observations of Mr. Hamilton's performance, which were unremarkable and ambiguous;" and (3) given Mr. Hamilton's weight, stature, and admission to drinking two beers with a low volume of alcohol, Mr. Hamilton could not have been incapable of safely operating a vehicle. Def.'s Appeal Br. at 1-2; Def.'s Reply Br. at 2-4. The Court will analyze each of Mr. Hamilton's three arguments.

### *i. Mr. Hamilton's Challenge to the Lack of Blood and Breath Evidence Showing Intoxication*

Mr. Hamilton's first argument is that there is "zero scientific evidence" in the form of blood or breathalyzer testing that he was intoxicated. Def.'s Appeal Br. at 15 (emphasis removed). "Given the central importance of BAC to the determination," he says, "it is extremely unlikely that

---

³ Mr. Hamilton does not dispute the first element.

a DWI conviction can survive a sufficiency challenge without scientific evidence." *Id*. However, federal courts interpreting the DUI regulation at issue have held that "[i]t is not necessary to prove defendant's blood alcohol content to obtain a conviction under 36 C.F.R. § 4.23(a)(1)." *United States v. King*, 894 F.Supp.2d 737, 745 (W.D. Va. 2012); *United States v. Rauhof*, No. 1:06PO00057, 2006 WL 3455066, at *3 (W.D. Va. Nov. 29, 2006) ("The regulation does not state that this showing of an incapability of safe operation must be shown by diagnostic or laboratory testing such as a preliminary breath test or a blood alcohol content test."). Rather, the "totality of the evidence," including "the officer's observations in the field, and [the] defendant's behavior, including erratic driving, slurred speech, bloodshot eyes, failure of field sobriety tests, and the smell of alcohol about the defendant's person," can shed light on whether the person was intoxicated. *King*, 894 F.Supp.2d at 745-46 (citations omitted). The totality of the evidence can certainly include the defendant's BAC. *See United States v. Foster*, 829 F.Supp.2d 354, 368 (W.D. Va. 2001). But proof of a breathalyzer or blood alcohol content is not a prerequisite to obtaining a conviction under § 4.23(a)(1). *See United States v. Coleman*, 750 F. Supp. 191, 196 (W.D. Va. 1990).

### *ii. Mr. Hamilton's Challenge to Ranger Gallagher's Observations and Testimony*

Having determined the correct standard of proof to support a DUI conviction– *i.e.* totality of the evidence – the Court now asks whether the trial court adhered to that standard. Of course, the "totality of evidence" here consists almost entirely of Ranger Gallagher's observations. Therefore, Mr. Hamilton's second argument is devoted to attacking the ranger's observations, both from the FSTs and from Ranger Gallagher's initial observations of Mr. Hamilton. As to the FSTs, Mr. Hamilton stresses that because Ranger Gallagher could not offer expert testimony linking performance on the FSTs to intoxication, he testified as a layperson concerning Mr. Hamilton's

coordination on the FSTs, and that those lay observations were "utterly unremarkable." Def.'s Reply Br. at 7. Mr. Hamilton points to the following examples of Ranger Gallagher's trial testimony that cast doubt on his observations: During the one-legged-stand test, Mr. Hamilton "kept his arms at [his] side," and Ranger Gallagher thought "he was going to lose his balance," but "[h]e did not." *Id.* On the walk-and-turn test, Mr. Hamilton "began to step off [the] line" even though no physical line existed since Mr. Hamilton had to "visualize the line," and Ranger Gallagher felt that Mr. Hamilton did not follow his instructions even though he "did continue in a straight line with [his] hands to the side," walked nine steps, and stopped the test. *Id*. Mr. Hamilton also argues that Ranger Gallagher's instructions were "myriad" and "deliberately [] detailed," such that they Mr. Hamilton was setup to fail. *Id*. Again, Mr. Hamilton stresses that Ranger Gallagher's lay observations of Mr. Hamilton were ambiguous and unremarkable.

However, as the United States correctly notes, a law enforcement officer's lay opinion testimony with respect to his observations of a suspect's performance on FSTs is circumstantial evidence of intoxication. *See United States v. Horn*, 185 F. Supp. 2d 530, 533, 559 (D. Md. 2002) ("A police officer trained and qualified to perform SFSTs may testify with respect to his or her observations of a subject's performance of these tests, … and these observations are admissible as circumstantial evidence that the defendant was driving while intoxicated … the probative value of the SFSTs derives from their basic nature as observations of human behavior."). Thus, in *Volk v. United States*, 57 F.Supp.2d 888, 896 (N.D. Cal. 1999), a case cited by the United States, the court held that an officer's testimony describing his administration of FSTs was admissible because the officer's conclusions were "grounded in assumptions about levels of coordination and steadiness that are familiar to the layperson." Much the same is true here concerning the ranger's field tests.

As for whether Mr. Hamilton's performance on those tests was "ambiguous" or "unremarkable," those are assessments normally left for the trier of fact. After of all, the trier of fact's function is to reach conclusions based on common sense and evidence consisting of direct and circumstantial evidence. Here, the magistrate judge properly credited Ranger Gallagher's field observations as circumstantial evidence of intoxication. On the one-legged-stand test Mr. Hamilton's balance was unsure. He did not perform the "one thousand one, one thousand two," counting exercise as instructed. He planted his foot down before the ranger told him to stop and did not complete the test. On the walk-and-turn test he did not step heel-to-toe "at all." He quickly stepped off the imaginary line, and on the ninth step when he was supposed to apparently pivot back he "just stopped performing the test … without turning or returning the nine steps back." The trial judge properly considered this information as circumstantial evidence of intoxication.

Field tests aside, Mr. Hamilton also tries to cast doubt on Ranger Gallagher's initial observations of Mr. Hamilton immediately following the car collision. For example, when asked what "difficultly" Mr. Hamilton had in producing documents, the ranger clarified that Mr. Hamilton initially only handed over his driver's license, but that that he produced all of the requested documents, including registration and insurance, later on. As for "difficulty with his seatbelt," Ranger Gallagher later in his testimony contradicted himself, saying he could not recall whether Mr. Hamilton had any difficulty removing his seatbelt. And when asked whether a 6-foot-1 Mr. Hamilton leaned on his car door when exiting because he was a "larger guy getting out of a smaller car," Ranger Gallagher said it was possible. On cross-examination, Ranger Gallagher also conceded that he could not definitively say whether Mr. Hamilton had "slurred speech," since that "could have been his normal speech pattern." Nor could he have known if Mr. Hamilton was intoxicated "just from the smell of alcohol."

Despite defense counsel's cross-examination of Ranger Gallagher, the ranger's initial observations supported the trial judge's conviction. The ranger watched as Mr. Hamilton reversed his car so that the vehicle behind him honked its horn. When the ranger asked him if he was ok, Mr. Hamilton responded, "what happened?" The smell of alcohol emanated from the vehicle. Mr. Hamilton's speech was slurred.[4] He had bloodshot eyes and admitted to drinking two beers. In his appeal brief Mr. Hamilton argues that his collision with one car and near collision with another "boil[s] down … to bad parallel parking." Def.'s Reply Br. at 4. And as for having bloodshot eyes, he points to an analysis from the *Harvard Journal of Law and Public Policy* that a law enforcement officer's description of a suspect's bloodshot eyes, is "well-rehearsed[] boilerplate" and that his bloodshot eyes could have resulted from an earlier a vigorous hike. Def.'s Reply Br. at 5 (citations omitted). However, the trier of fact credited Ranger Gallagher's observations, and without a contrary evidentiary showing from Mr. Hamilton, the Court cannot set aside the magistrate judge's findings. *See Cope*, 676 F.3d at 1225 ("Where conflicting evidence exists, [the reviewing court does] not question the [fact-finder's] conclusions regarding the credibility of witnesses or the relative weight of evidence.").

Mr. Hamilton argues that *United States v. Cope*, 676 F.3d 1219 (10th Cir. 2012), undermines the trial judge's finding of guilt. Cope, a pilot, was convicted of being under the influence of alcohol while operating a common air carrier in violation of 18 U.S.C. § 342. The morning of the flight, Cope's copilot noticed Cope's puffy face and red eyes and that Cope smelled of alcohol in the cockpit. *Id* at 1221. Cope later told his copilot that the night before he had a couple of beers, whiskey, and bought beer at a gas station. *Id*. at 1228. He also made a comment suggesting

---

[4] Mr. Hamilton argues that the Court knows that he speaks in a slurred manner based on a face-to-face interaction. However, the Court only looks to the trial evidence, and in any case the Court does not weigh the evidence.

that he would fail a breathalyzer test. *Id*. Blood alcohol tests taken three hours after Cope's flight departed showed that his BAC was .094. *Id*. In rejecting his challenge to the sufficiency of the evidence, the Tenth Circuit explained that the following evidence showed that Cope was under the influence of alcohol: (i) Cope's high BAC, (ii) his significant drinking the night before, (iii) his statement suggesting that he would fail a breathalyzer, (iv) the smell of alcohol on his person, and (v) his puffy face and red eyes. *Id*. at 1229. Mr. Hamilton stresses that the only shared clues of intoxication between him and Cope are red eyes and the odor of alcohol; otherwise there is no BAC evidence, no evidence of significant drinking, and no evidence that he failed or would fail a breathalyzer.

The Court acknowledges that Mr. Hamilton makes credible arguments. However, a review of the cases cited by the United States shows that the evidence supported Mr. Hamilton's conviction. In *Volk*, 57 F.Supp.2d at 890, the officer stopped the defendant for running a stop sign and speeding. Alcohol was on the defendant's breath, his eyes were bloodshot, and he swayed from side to side when taking the HGN test. *Id*. at 891. On the walk-and-turn test, the officer concluded that the defendant failed the test because he stepped heel-to-toe on only eight of the nine steps – unlike Mr. Hamilton who stepped heel-to-toe on zero of the nine steps. And on the return walk the defendant took a hard, "about-face" turn, rather than small steps with a pivot towards the officer – again, unlike Mr. Hamilton who did not return the nine steps at all. *Id*. On the one-legged-stand test the defendant, like Mr. Hamilton, had unsteady balance, although unlike Mr. Hamilton the defendant "hopped up and down on the planted foot," to keep steady. *Id*. The field tests, along with evidence that the defendant wrote out "jumbled" letters of the alphabet, "stumbled over" counting fingers on his hand, had breath test levels of .193 and .190, and had

three empty bottles of beer in his car, supported a finding that the defendant was intoxicated. *Id*.; *see id*. at 892; 897.

In the next case that the United States relies on, *United States v. Wilson*, 711 Fed. Appx. 706, the Fourth Circuit sustained a DUI conviction on even less evidence than was presented in *Volk*. At 4 a.m. an officer discovered the defendant's car partially blocking a highway. *Id*. at 707. A strong odor of alcohol came from the vehicle, vomit was on the car's door frame, and the defendant "screamed profanities and threats" at the officer. *Id*. On the HGN test, the defendant's eyes could not smoothly follow the officer's pen. *Id*. at 707-08. A backup officer smelled alcohol on the defendant's breath, and at trial both officers testified that they believed the defendant was drunk. *Id.* at 709-10. The Fourth Circuit found this evidence sufficient to support the conviction for driving a vehicle under the influence. *Id.* True, Mr. Hamilton yelled no profanities at the ranger. In fact, the ranger's testimony established that Mr. Hamilton was calm, respectful, and polite. Nor was vomit on Mr. Hamilton's person or car apparent, which would have suggested obvious intoxication. But in *Wilson*, officers did not administer walk-and-turn and one-legged test at issue here. The Court has already discussed how Mr. Hamilton's performance on those tests was important circumstantial evidence of intoxication and how the trial court properly credited the ranger's observations.

The final case the United States relies on is *United States v. Mirelez*, 52 F. App'x 106, 107 (10th Cir. 2002). There, the Tenth Circuit affirmed the defendant's conviction for DUI on a military base where the "defendant crossed the center line while driving, drove at a high rate of speed, failed to signal upon making a turn, smelled of an alcoholic beverage, and had trouble with his balance in a field sobriety test." *Id*. at 107. Important differences distinguish this case from *Mirelez*. Mr. Hamilton did not cross a center line, drive at a high rate of speed, or fail to use a turn

signal. Rather, he was going about 5 to 10 m.p.h. in a 15 m.p.h. area. However, the key lesson gleaned from *Mirelez* is the court's affirmation of the defendant's conviction because "[t]he jury … simply found the prosecution's version of the case more compelling than defendant's version. We cannot disturb that determination." *Id.* at 108. Likewise, the trial judge credited the prosecution's evidence, drew reasonable inferences from Ranger Gallagher's observations and testimony, and found that the evidence supported a guilty verdict. *Mirelez* teaches that the Court cannot disturb that verdict.

Finally, in a case cited by neither party but found by the Court upon on its independent review, a federal magistrate judge found the defendant not guilty of violating the DUI regulation at issue here because

> the government has presented no evidence of the smell of alcohol about Rauhof's person, that his speech was slurred, that his eyes were bloodshot or any other evidence of behavioral or coordination impairment that might suggest that Rauhof was under the influence of alcohol.

*United States v. Rauhof*, No. 1:06PO00057, 2006 WL 3455066, at *3 (W.D. Va. Nov. 29, 2006). Here, the United States made the exact evidentiary showing that was missing in *Rauhof*. Accordingly, *Rauhof* and the cases cited by the United States convince the Court that the trial judge properly weighed Ranger Gallagher's testimony and observations in finding Mr. Hamilton guilty beyond a reasonable doubt.

### iii. Mr. Hamilton's Challenge to the Evidence of Two Beers

Finally, Mr. Hamilton's third argument is that because of his weight and stature, it would be a stretch to believe that two Bud Light beers rendered him incapable of safely operating a vehicle. Mr. Hamilton asks the Court to judicially notice under Fed. R. Evid. 201(c)(2),(d) that Bud Light is 4.2% alcohol by volume (ABV). Citing the Tenth Circuit's statement in *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605

15

F.3d 789, 819 (10th Cir. 2010), that courts have referred to "on-line resources, regarding the effects of [] a BAC level," Mr. Hamilton also asks the Court to judicially notice the Cleveland Clinic's online BAC calculator. Using that calculator, if a 220-pound Mr. Hamilton drank two 12-ounce Bud Lights in a single hour before driving, then his BAC would have been only 0.019. Again using the BAC calculator, Mr. Hamilton estimates that it would have taken five beers for his blood alcohol content to near the level of 0.08, the point at which a person is presumptively intoxicated. Accordingly, Mr. Hamilton argues that his "likely BAC wasn't just short of the 0.08 evidentiary proxy; it was *well* short, and simply not indicative of his having been incapable of safe operation." Def.'s Reply Br. at 4 (emphasis in original) (internal quotations omitted).

Even if the Court judicially noticed Bud Light's ABV and the given effects of a BAC level by using an online calculator, it does not appear that the facts on which Mr. Hamilton's BAC calculations are based, such as his weight, were presented at trial. Moreover, a reviewing court does not "examine the evidence in bits and pieces. Rather, [the court] evaluate[s] the sufficiency of the evidence by considering the collective inferences to be drawn from the evidence as a whole." *Cope*, 676 F.3d at 1225. When properly viewing the complete picture demonstrated by the totality of the circumstantial and direct evidence, and viewing the evidence in the light most favorable to the United States, evidence of two beers, Ranger Gallagher's field observations, and Mr. Hamilton's striking one car and almost hitting another was, on the whole, sufficient to find Mr. Hamilton guilty beyond a reasonable doubt under 36 C.F.R. § 4.23(a)(1). Accordingly, the Court affirms the trial court's judgment of conviction under § 4.23(a)(1).

**b. Sufficient Evidence Supported the Unsafe Driving Conviction**

The National Park Service's "Unsafe Operation" regulation prohibits, as relevant here, "[f]ailing to maintain that degree of control of a motor vehicle necessary to avoid danger to

persons, property or wildlife." 36 C.F.R. § 4.22(b)(3).[5] The regulation notes that "[t]he elements of this section constitute offenses that are less serious than reckless driving." 36 C.F.R. § 4.22(a). With the "less serious than reckless driving," standard in mind the trial judge noted that "if the [Jeep] was actually hit, then there is danger to property," and found Mr. Hamilton guilty. Mr. Hamilton argues that the magistrate judge's interpretation of the regulation renders "any intervehicle contact [] *per se* Unsafe Driving," which is inconsistent with the *mens rea* component of most criminal laws. He also argues that the evidence was insufficient where Mr. Hamilton traveled only a couple of hundred yards, drove 5 to 10 m.p.h. in a 15 m.p.h. zone, and bumped the Jeep but caused no damage whatsoever.

Sufficient evidence supported the trial judge's finding of guilt. Mr. Hamilton collided with the Jeep in front of him, then failed to maintain a degree of control necessary to avoid danger to the car behind him, as evidenced by that car's honk of its horn. When Ranger Gallagher approached Mr. Hamilton, he admitted to drinking two beers. A reasonable person would have made the necessary adjustments to avoid hitting one car and nearly hitting another. Drawing all reasonable inferences in the United States' favor, as the Court is obliged to, the trial evidence was sufficient to support the conviction.

### c. The Prosecutor's Waiver of His Opening Statement Does Not Entitle Mr. Hamilton to an Acquittal

At trial the prosecutor waived his opening statement on behalf of the government. Mr. Hamilton argues that this entitles him to an acquittal because he was not able to preview the government's case to adequately mount a trial defense. In support of this proposition he relies on

---

[5] Caselaw interpreting 36 C.F.R. § 4.22(b)(3) is scant, and there is no Tenth Circuit decision interpreting this regulation.

three legal authorities, two state law cases and one federal case. The first is a New York state court opinion that "the prosecutor's opening statement [cannot] be waived." *People v. Kurtz*, 414 N.E.2d 699 (1980). The second is a Missouri state court decision to the effect that the prosecutor's waiver denied him "an understanding of the [United States'] contemplated course of action," and what evidence would be presented against him. Def.'s Appeal Br. at 18 (citing *State v. Smith*, 988 S.W.2d 71, 76 (Mo. App. 1999)).

Aside from these state law authorities, Mr. Hamilton relies on one federal case from the Fifth Circuit, *United States v. Yaughn*, 493 F.2d 441 (5th Cir. 1974). In *Yaughn*, the prosecutor requested to waive his opening argument and to reserve that time for an extended closing argument. *Id*. at 444. The trial court granted the request, saying that the prosecution could "have an opening and concluding argument within their imposed time limit, and, if they choose not to make an opening argument and reserve their time for concluding argument, they have that right." *Id*. On appeal, the defendant argued that this procedure put him and at a distinct disadvantage because, as explained by the dissenting judge Mr. Hamilton cites to, it "forced [the defendant] to argue his nonculpability before the government ha[d] fully revealed its theory of the case." *Id.* at 446. However, the panel majority, admittedly with very little analysis, affirmed the trial court, because "[t]he right to close, as well as the right to open the argument may be waived." *Id.*

The Court notes that since *Yaughn* was decided in 1974, no subsequent opinion from any federal court of appeals has discussed or even cited the panel's holding described above. The Court's independent research reveals little judicial guidance on whether a trial judge's order to allow a prosecutor to waive his or her opening argument justifies an acquittal. Because Mr. Hamilton has identified no binding authority that such a waiver mandates an acquittal, and because *Yaughn* suggests that the prosecutor acted properly, the Court refuses to set aside the verdicts.

18

**IT IS THEREFORE ORDERED** that the trial court's judgment of conviction is **AFFIRMED**, and that Defendant Gregory Hamilton's appeal is **DISMISSED**.

**IT IS SO ORDERED**.

_____
JUDITH C. HERRERA
UNITED STATES DISTRICT JUDGE